UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY R. JUBACK,

    Plaintiff,

-vs-                                                                                   Case No. 8:08-cv-768-T-24TBM

RADIOSHACK CORPORATION,

    Defendant.

_____/

ORDER

This cause comes before the Court on Defendant's motion for summary judgment (Doc. 18.) Plaintiff has filed a response in opposition to the motion. (Doc. 21.)

STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Id.* When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Id.*

BACKGROUND

Plaintiff worked for Defendant as the Loss Prevention Manager ("LPM") in charge of the

263 Radioshack stores in the central Florida region. (Pl.'s Depo., pp. 37–38.) As an LPM, he was in charge of investigating monetary and inventory loss due to theft, policy violations, and other problems. (*Id.* at 69–70.) He also performed safety audits, Sarbanes-Oxley audits, and loss-prevention-compliance audits. (*Id.* at 86.) He was told by his managers which stores to investigate and audit (*id.* at 46–50), but he had discretion as to how (*id.* at 60–63, 66, 88 ), and sometimes when (*id.* at 50–51), to conduct the investigations, and how long (*id.* at 61) the investigations would take.

Plaintiff's investigations were extensive and always different. (*Id.*) "There [was] no typical day in [loss prevention]." (*Id.* at 101.) Plaintiff decided whether to conduct interviews and, if so, whom to interview. (*Id.* at 63.) He decided whether to install security cameras. (*Id.* at 60, 65.) He sometimes decided whether to call the police to deal with thieves. (*Id.* at 71.) He would determine what he believed was responsible for the losses in the stores in his region and then would report his findings to his managers. The managers decided on the appropriate remedy. (Light Decl., p. 2.) Plaintiff also prepared presentations on loss prevention and conducted loss-prevention training. (Pl. Depo., pp. 55–57, 119, 138–39; Light Decl., p. 2.)

Plaintiff's own description—provided on his job application to his current employer[1]—of his work over the course of his employment at Radioshack stated:

> I was responsible for the Loss prevention programs [at Radioshack] for a 263 store region with sales exceeding $500 Million. I managed seven district managers and successfully reduced shrink results to below a [sic] 1.00% for the entire region. I developed and executed programs to deter and/or detect internal fraudulence with the company. I provided training at the store, district and division level on many

---

[1]Plaintiff currently works as a Zone Loss Prevention Manager for Michael's Stores, Inc., a position that does not entitle him to overtime pay. (Pl.'s Depo., pp. 21, 24–25.)

topics including operations, business ethics, workplace violence, and inventory controls.

(Doc. 18-7, pp. 3–4.) His application also stated that he "[s]uccessfully developed, tested, and implemented Corp. Initiatives Company wide with successful results." (Id., pp. 5–6.)

Plaintiff admits that his work was of major importance to Radioshack management. (Pl.'s Depo, p. 86.) Plaintiff was paid approximately $68,000 per year, or about $1,300 per week (*Id.* at 38 – 39, Ex. 3), and was not required to record or report his hours. (*Id.* at 36– 37.) Plaintiff never asked for overtime wages during his employment. (*Id.* at 129–30.)

## DISCUSSION

The Fair Labor Standards Act ("FLSA") requires that certain employees be paid one and one-half times their regular wage for the time they work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). Some employees, however, are excluded from the overtime pay requirement, such as those "employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." *Id.* § 213(a)(1).

How an employee spends his time on the job is a question of fact; whether his employment activities exempt him from the FLSA's overtime requirement is a question of law. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *Walters v. Am. Coach Lines of Miami, Inc.*, 569 F.Supp 2d 1270, 1280–81 (S.D. Fla. 2008).

An employee falls under the administrative exemption from the overtime-pay requirement if he 1) receives a salary or fee at a rate of $455 per week or more, 2) is primarily employed in office or non-manual work directly related to his employer's general business

3

operations or customers; and 3) exercises discretion and independent judgment with respect to matters of significance, as his primary duty. 29 C.F.R. § 541.200(a). The parties agree, for purposes of summary judgment, that Plaintiff meets the first two of the three criteria for the administrative exception. (Doc. 21, p. 6.) Thus, the only issue is whether Plaintiff, as his primary duty, exercised discretion and independent judgment with respect to matters of significance.

One's "primary duty" is defined as one's "principal, main, major, or most important duty," when analyzed in light of all the facts, such as "the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." 29 C.F.R. § 541.700(a). If an employee spends more than fifty percent of his time performing exempt work, he will generally be considered exempt from the overtime requirement. *Id.* § 541.700(b). However, an employee may still be exempt if exempt work consumes less than fifty percent of his time, if the other factors indicate that the exempt work constitutes his primary duty. *Id.*

"[T]he exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Such exercise means that "the employee has authority to make an independent choice, free from immediate direction or supervision . . . even if [his] decisions or recommendations are reviewed at a higher level." *Id.* § 541.202(c). Whether an employee exercises "discretion and independent judgment" in

4

significant matters depends on all of the facts comprising the employee's particular situation; the specific factors to be analyzed include, among others:

> whether the employee carries out major assignments in conducting the operations of the business, whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; . . . [and] whether the employee investigates and resolves matters of significance on behalf of management

*Id.* § 541.202(b).

While not dispositive, the Court notes that an opinion promulgated by the Department of Labor is helpful in clarifying the requirements of the administrative exemption with regard to loss-prevention duties. *See* 29 U.S.C. § 213(a)(1). The Department of Labor found that an LPM who had similar duties to Plaintiff's—such as investigating losses, reporting findings to store and regional managers, and training others with regard to loss prevention—met the administrative overtime exemption under the FLSA. (Doc. 18–8.) The Department opinion specifically noted that an LPM's effect on stores' profitability, as well as his role in training and conducting internal investigations, constituted the exercise of independent judgment and discretion relating to matters of significance. (*Id.* at 5.) Although the LPM position examined by the Department of Labor is not identical to Plaintiff's, as the position also involved loss-prevention-program design and implementation duties—and the degree to which Plaintiff was involved in such activities is disputed—the opinion is otherwise persuasive.

As most of the facts surrounding the work done by Plaintiff are relatively undisputed, the Court is empowered to find that, as a matter of law, Plaintiff's job was also one characterized by the exercise of discretion and independent judgment in significant matters. It is undisputed that conducting loss prevention investigations and audits, and formulating the reports thereof,

constituted Plaintiff's primary duty as compared to all of his other employment functions. Plaintiff chose how to conduct those investigations and audits for 263 stores throughout central Florida. These investigations were all unique (*id.* at 61) and required Plaintiff's judgment in their execution (*see, e.g., id.* at 88); Plaintiff would "compar[e] and . . . evaluat[e] . . . possible courses of conduct, and act[ ] or mak[e] a decision after the various possibilities ha[d] been considered," *see* 29 C.F.R. § 541.202(a). In choosing how to execute his assignments, he had "to make an independent choice, free from immediate direction or supervision," *See* 29 C.F.R. § 541.700(a). According to Plaintiff, employee theft and policy violations, and Plaintiff's investigations and audits of those and other, matters were very important to Radioshack's management (Pl.'s Depo., p. 86); in other words Plaintiff "investigate[d] and resolve[d] matters of significance on behalf of management." He also trained other employees in these important matters. In addition, Plaintiff's work—just in recovering stolen funds and materials from employees alone—had an economic benefit of between $400,000 or $500,000 per year (*Id.* at 78), and entire stores would have operated at a loss, rather than a profit, if not for Plaintiff's efforts. (*Id.* at 79–80). Thus, Plaintiff "perform[ed] work that affect[ed] business operations to a substantial degree . . . related to operation of a particular segment of the business."

Examining Plaintiff's duties through the lens of the FLSA's administrative exemption requirements, the Court finds that his position as a Loss Prevention Manager at Radioshack was exempt from the overtime pay requirements under of the FLSA.

## CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Defendant's motion for summary judgment is GRANTED. The Clerk is directed to enter judgment in favor of Defendant and to

close the case.

      DONE AND ORDERED this 6th day of May, 2009.

                                                  SUSAN C. BUCKLEW
                                                  United States District Judge

Copies to: Counsel of Record